# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| **YETI Coolers, LLC,** | **Case No.** |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| **v.** | |
| **BOSS Coolers LLC** | **(1)   TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1) AND 15 U.S.C. § 1125(a);** |
| **Defendant.** | **(2)   TRADEMARK AND TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);** |
| | **(3)   TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);** |
| | **(4)   TRADEMARK AND TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;** |
| | **(5)   PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271;** |
| | **(6)   COMMON LAW TRADEMARK AND TRADE DRESS INFRINGEMENT;** |
| | **(7)   COMMON LAW UNFAIR COMPETITION;** |
| | **(8)   COMMON LAW MISAPPROPRIATION; AND** |
| | **(9)   UNJUST ENRICHMENT.** |
| | **Jury Trial Demanded** |

## COMPLAINT

Plaintiff, YETI Coolers, LLC ("YETI"), for its complaint against BOSS Coolers LLC ("BOSS Coolers"), based on knowledge and on information and belief as appropriate, alleges as follows:

### The Parties

1.     YETI is a company organized and existing under the laws of the State of Delaware with a principal place of business at 5301 Southwest Parkway, Suite 200, Austin, TX 78735.

2.     Upon information and belief, BOSS Coolers is a corporation organized under the laws of the State of Hawaii with a principal place of business at 111 Hekili Street, Suite 1848 A, Kailua, Hawaii 96734 that does business under the name BOSS Coolers, including through the websites http://www.bosscoolers.com and https://www.facebook.com/bosscoolers.

### Jurisdiction and Venue

3.     This is an action for trademark and trade dress infringement, trade dress dilution, unfair competition and false designation of origin, patent infringement, misappropriation, and unjust enrichment.  This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("the Lanham Act"), the Patent Act, 35 U.S.C. § 1, *et seq*., federal common law, the Texas Business & Commerce Code, and state common law, including the law of Texas.

4.     This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

5.     This Court has personal jurisdiction over BOSS Coolers because, *inter alia*, BOSS Coolers is doing business in the State of Texas, including in this District.  For example, and as discussed in more detail below, (i) BOSS Coolers' principal website

(http://www.bosscoolers.com) reaches into Texas, including this District, on which BOSS Coolers has advertised, promoted, offered for sale, sold, and distributed, and continues to advertise, promote, offer for sale, sell, and distribute Infringing Products (defined below) to customers and potential customers, (ii) BOSS Coolers' tortious acts giving rise to this lawsuit are occurring in the State of Texas, including in this District, (iii) BOSS Coolers' customers and/or potential customers reside in the State of Texas, including in this District, and (iv) BOSS Coolers has stated that it is shipping Infringing Products to the continental U.S. through the Port of Houston.

6. Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

**General Allegations – YETI's Business and Intellectual Property**

7. For almost ten years, YETI has continuously engaged in the development, manufacture, and sale of premium, heavy-duty coolers. For almost ten years, YETI has also used the trademark "YETI" throughout the United States in connection with its cooler products, including with advertising and promoting its cooler products. For example, below in Illustration 1 is a YETI advertisement from 2011 showing an exemplary use of YETI's "YETI" trademark:

**Illustration 1:  Exemplary YETI Advertisement using "YETI."**



8.    YETI has also used the trademark "YETI" throughout the United States in connection with a variety of other goods and services.

9.    In view of YETI's extensive and continuous use of "YETI," consumers have come to associate "YETI" as a source identifier of YETI, and YETI owns trademark rights in this mark.

10.    YETI also owns several trademark registrations, including Trademark Registration No. 3,203,869 ("the '869 Registration") for "YETI" for portable coolers.  A copy of the '869 Registration is attached as Exhibit 1.[1]

11.    As a result of, *inter alia*, YETI's exclusive, continuous and substantial use of "YETI," YETI's exclusive, continuous and substantial advertising and promoting of products

---

[1] YETI also owns Trademark Registration No. 4,083,932 for "ROADIE" for portable coolers and Trademark Registration No. 4,083,930 for "TUNDRA" for portable coolers.

bearing "YETI," and the publicity and attention that has been paid to YETI's "YETI" trademark, the mark has become famous and has acquired valuable goodwill in the marketplace, as consumers have come to uniquely associate the "YETI" trademark as a source identifier of YETI.

12.     In addition, YETI created unique, distinctive, and non-functional designs to use with YETI's coolers.  YETI has extensively and continuously promoted and used these designs for years in the United States.  Through that extensive and continuous use, YETI's designs have become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's designs also have acquired substantial secondary meaning in the marketplace and have become famous.  As discussed in more detail below, YETI owns trade dress rights relating to the source-identifying features of its cooler designs.  YETI also owns United States patents related to its coolers.

13.     In about 2008, YETI introduced its "Roadie®" and "Tundra®" coolers into the marketplace.

14.     As a result of YETI's considerable investments and efforts, the Roadie® and Tundra® coolers are designed and built to provide extreme insulating capabilities and exceptional durability.  YETI has invested substantial resources in the design, development, manufacture, and marketing of its coolers.

15.     YETI has sold more than 400,000 Roadie® coolers more than 1,000,000 Tundra® coolers throughout the United States, including sales to customers in the State of Texas.  YETI has expended significant resources advertising and marketing its Roadie® and Tundra® coolers. The design and features of YETI's Roadie® and Tundra® coolers have received widespread and

unsolicited public attention.  For example, the Roadie® and Tundra® coolers have been featured in numerous newspaper, magazine, and Internet articles directed to outdoor enthusiasts.

16.     The designs of the Roadie® and Tundra® coolers have distinctive and non-functional features that identify to consumers that the origin of the coolers is YETI.  As a result of at least YETI's continuous and exclusive use of the designs of the Roadie® and Tundra® coolers, YETI's marketing, advertising, and sales of the coolers, and the highly valuable goodwill and substantial secondary meaning acquired as a result, YETI owns trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers, which consumers have come to uniquely associate with YETI.

17.     Illustrations 2 and 3 below show exemplary YETI Roadie® and Tundra® coolers.

**Illustration 2:  Exemplary Image of a YETI Roadie® Cooler.**



**Illustration 3:  Exemplary Images of a YETI Tundra® 45 Cooler and a YETI Tundra® 65 Cooler.**



**YETI Tundra® 45 Cooler**



**YETI Tundra® 65 Cooler**

18.     YETI's trade dress rights in the designs and appearances of the Roadie® and Tundra® coolers include, but are not limited to, the visual flow of the Tundra® and Roadie® coolers, the curves and lines in the Tundra® and Roadie® coolers, the design, style, and appearance of these curves and lines in the Tundra® and Roadie® coolers, the visual connection and relationship between one or more of the curves and lines in the Tundra® and Roadie® coolers, and the style, design, and appearance of one or more design aspects of the Tundra® and Roadie® coolers, including but not limited to the design and appearance of the style line on the front of the cooler; the design and appearance of the style line on the back of the cooler; the design and appearance of the style line on each side of the cooler; the design and appearance of the "duck-bill" tapered front corners of the cooler; the design and appearance of the inverted style line above the name plate and below the lid; the design and appearance of the ledge around the perimeter of the cooler; the design and appearance of the handles, the design and appearance of the front, side and rear design of the feet of the cooler; the placement, design and appearance of the slots on the side, front and rear of the cooler; the design and appearance of the latches; the design and appearance of the name plate and name plate lettering; the placement, design, and

appearance of the name plate on the front between the two front style lines; and the color contrast, color combinations, and shapes of features of the cooler, whether these design features are alone or in any combination with each other, including the overall look and appearance of the Roadie® and Tundra® coolers.

19.     As a result of YETI's exclusive, continuous and substantial use, advertising, and sales of coolers bearing YETI's trade dress, and the publicity and attention that has been paid to YETI's trade dress, YETI's trade dress has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate them as source identifiers of YETI.

20.     In addition to its trademark and trade dress rights, YETI also owns United States patents related to its coolers, including U.S. Patent No. 8,910,819 ("the '819 patent") and U.S. Patent No. 9,187,232 ("the '232 patent").  The '819 patent is titled "Insulating Container and Latching Mechanism." On December 16, 2014, the '819 patent was duly and legally issued by the U.S. Patent Office to Roy Joseph Seiders, who assigned to YETI the entire right, title, and interest to the '819 patent, including all rights to recover for all infringements thereof. A copy of the '819 patent is attached as Exhibit 2.

21.     The '232 patent is titled "Insulating Container and Latching Mechanism."  On November 17, 2015, the '232 patent was duly and legally issued by the U.S. Patent Office to Roy Joseph Seiders, who assigned to YETI the entire right, title, and interest to the '232 patent, including all rights to recover for all infringements thereof. A copy of the '232 patent is attached as Exhibit 3.

**General Allegations – BOSS Coolers' Unlawful Activities**

22.     BOSS Coolers has undertaken a multitude of unlawful activities, including infringing and diluting YETI's "YETI" trademark, infringing and diluting YETI's trade dress in its cooler products, and infringing YETI's patents.   BOSS Coolers' websites include http://www.bosscoolers.com,               https://www.facebook.com/bosscoolers,              and https://www.instagram.com/bosscoolers/.   A printout of http://www.bosscoolers.com is attached as Exhibit 4, a printout of https://www.facebook.com/bosscoolers is attached as Exhibit 5, and a printout of https://www.instagram.com/bosscoolers/ is attached as Exhibit 6.

23.     BOSS Coolers used and currently uses YETI's "YETI" trademark and/or colorable imitations thereof, in *inter alia*, advertising, promoting, offering to sell, selling, and distributing BOSS Coolers' coolers, and is thereby infringing and diluting YETI's "YETI" trademark and intentionally trading on YETI's goodwill.

24.     BOSS Coolers initially used YETI's exact "YETI" trademark.  A screenshot from BOSS Coolers' Instagram account (https://www.instagram.com/bosscoolers/) that shows an example of BOSS Coolers' use of "YETI" is set forth below in Illustration 4.

**Illustration 4:  Screenshot from BOSS Coolers' Instagram Account.**



25.     Perhaps recognizing that its use of "YETI" was unlawful, more recently BOSS Coolers has switched to using a different confusingly similar mark, "YETEE," in connection with its cooler products. A screenshot from BOSS Coolers' website that shows an example of BOSS Coolers' use of "YETEE" is set forth below in Illustration 5.

**Illustration 5:  Screenshot from BOSS Coolers' Website.**



26.    Additionally, BOSS Coolers routinely used and continues to use the hashtag "#yetikiller" in connection with its cooler products. An annotated screenshot from BOSS Coolers' Instagram account that shows an example of BOSS Coolers' use of the "#yetikiller" hashtag is set forth below in Illustration 6.

**Illustration 6:  Annotated Screenshot from BOSS Coolers' Instagram Account.**



27.    In addition to infringing and diluting YETI's "YETI" trademark, Boss Coolers is also infringing and diluting YETI's trade dress by advertising, promoting, offering for sale, selling, and distributing infringing cooler products, including at least those in its "YETEE KILLER" series and "OG" series.   An image of one of BOSS Coolers' infringing coolers is

shown below in Illustration 7.  YETI refers to all of BOSS Coolers' infringing coolers as "the Infringing Products."

| Illustration 7:  Exemplary Image of an Infringing Cooler Product. |
| --- |



28.    Customers can currently order the Infringing Products from BOSS Coolers, at least through its primary website (http://www.bosscoolers.com) and its Facebook page (https://www.facebook.com/bosscoolers/app/410312912374011/).  When ordered through BOSS Coolers' primary website (http://www.bosscoolers.com/collections/medium-coolers), a customer can choose a specific cooler and a color (yellow, orange, sandstone, hulk green, sky blue, or hot pink).  A screen shot from BOSS Coolers' website that shows how a customer can order a cooler is set forth below in Illustration 8.  In this particular example, the customer would be ordering one YETEE KILLER 70 LITER cooler in sandstone.

**Illustration 8:  Screenshot from BOSS Coolers' Website.**



29.    BOSS Coolers' also repeatedly compares its coolers to YETI's coolers.  A screenshot from BOSS Coolers' Instagram account that shows an example of such a comparison between a YETI Tundra® cooler and a BOSS Coolers "YETEE KILLER" cooler is set forth below in Illustration 9.

**Illustration 9:  Screenshot from BOSS Coolers' Instagram Account.**



30.    BOSS Coolers also uses the hashtag "#bossvsyeti" in connection with its comparisons to YETI's coolers.   A screenshot from BOSS Coolers' Instagram account that shows an example of BOSS Coolers' use of the "#bossvsyeti" hashtag is set forth below in Illustration 10.

**Illustration 10:  Screenshot from BOSS Coolers' Instagram Account.**



31.     Further, BOSS Coolers' Infringing Products are in similar sizes as YETI's own products, and they are confusingly similar imitations of YETI's own products.  As a result of BOSS Coolers' activities related to the Infringing Products, there is a strong likelihood of confusion between BOSS Coolers and its products on the one hand, and YETI and its products on the other hand.

32.     YETI used its "YETI" trademark extensively and continuously before BOSS Coolers began using it, including in BOSS Coolers' advertisements, promotions, sales, offers to sell, and distribution of its Infringing Products.  Moreover, YETI's "YETI" trademark became famous in the United States and in the State of Texas before BOSS Coolers commenced its unlawful use of YETI's "YETI" trademark.

33.     YETI also used its trade dress extensively and continuously before BOSS Coolers began advertising, promoting, selling, offering to sell, or distributing its Infringing Products. Moreover, YETI's trade dress became famous and acquired secondary meaning in the United States and in the State of Texas before BOSS Coolers commenced its unlawful use of YETI's trade dress.

34.     As discussed above and as set forth in the counts below, BOSS Coolers' actions are unfair and unlawful.

**Count I: Trademark Infringement**
**Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)**

35.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

36.     Based on the activities described above, including, for example, BOSS Coolers using at least YETI's "YETI" federally registered trademark (the '869 Registration) and/or a colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers has infringed YETI's "YETI" trademark under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).  BOSS Coolers' use of YETI's "YETI" trademark is likely to cause confusion, or to cause mistake, or to deceive.

37.     BOSS Coolers' use of YETI's "YETI" trademark has caused and, unless, enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the good will and reputation for quality associated with YETI's cooler and other products.

38.     On information and belief, BOSS Coolers' use of YETI's "YETI" trademark has been intentional, willful, and malicious. BOSS Coolers' bad faith is evidenced at least by its direct copying of YETI's "YETI" trademark in an effort to sell its own cooler products,

including its use of "YETI" and "YETEE" in connection with its products, as seen, for example, in the illustrations above.

39.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits, actual damages, enhanced profits and damages, costs, and YETI's reasonable attorney fees under at least 15 U.S.C. §§ 1114(1), 1116, and 1117.

### Count II: Trademark Infringement
### Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

40.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

41.     Based on the activities described above, including, for example, BOSS Coolers using at least YETI's "YETI" trademark in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers has infringed and continues to infringe YETI's trademark rights under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of BOSS Coolers with YETI, and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, and/or otherwise associated with YETI.

42.     BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's "YETI" trademark and its cooler and other products.

43.     On information and belief, BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by BOSS Coolers using "YETI" and "YETEE" in connection with its products, and by BOSS Coolers' continuing disregard for YETI's rights.

44.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least BOSS Coolers' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III: Trademark Dilution**
**Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

45.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

46.     Based on the activities described above, including, for example, BOSS Coolers using at least YETI's "YETI" trademark in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers has diluted and continues to dilute YETI's "YETI" trademark under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has caused dilution of YETI's famous "YETI" trademark, at least by eroding the public's exclusive identification of YETI's famous "YETI" trademark with YETI, by lessening the capacity of YETI's famous "YETI" trademark to identify and distinguish YETI's cooler products, by associating YETI's famous "YETI" trademark with products of inferior quality, by impairing the distinctiveness of YETI's famous "YETI" trademark, and by tarnishing YETI's famous "YETI" trademark and reputation.

47.     YETI's "YETI" trademark is famous through extensive and continuous promotion and use for years in the United States. Through that extensive use, YETI's "YETI" trademark

has become a famous, well-known indicator of the origin and quality of YETI's cooler and other products throughout the United States and is widely recognized by the general consuming public as a designation of the source of YETI's cooler and other products. Moreover, YETI's "YETI" trademark became famous before BOSS Coolers commenced its use of YETI's "YETI" trademark and/or colorable imitations thereof in connection with the Infringing Products.

48.     BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's "YETI" trademark and its cooler and other products.

49.     On information and belief, BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by BOSS Coolers' copying of YETI's "YETI" trademark in an effort to sell its own cooler products, including BOSS Coolers using "YETI" and "YETEE" in connection with its products, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

50.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count IV: Trade Dress Dilution
### Under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

51.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

20

52.     Based on the activities described above, including, for example, BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, and on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, BOSS Coolers has diluted and continues to dilute YETI's trade dress under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has caused dilution of YETI's famous trade dress, at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler products, by associating YETI's famous trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

53.     YETI's trade dress is famous and is entitled to protection under the Lanham Act. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI's trade dress has acquired distinctiveness through YETI's extensive and continuous promotion and use of YETI's trade dress for years in the United States. Through that extensive use, YETI's trade dress has become a famous, well-known indicator of the origin and quality of YETI's cooler products throughout the United States and is widely recognized by the general consuming public as a designation of the source of YETI's cooler products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress became famous and acquired its secondary meaning before BOSS Coolers commenced its use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

54.     BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable

injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

55.     On information and belief, BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof have been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

56.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count V: Trade Dress Infringement**
**Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

57.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

58.     Based on the activities described above, including, for example, BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, and BOSS Coolers using at least YETI's trade dress in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers has infringed and continues to infringe YETI's trade dress rights under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of BOSS Coolers with YETI, and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and

misleading impression that the Infringing Products are manufactured by, authorized by, and/or otherwise associated with YETI.

59.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before BOSS Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the Infringing Products.

60.     BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

61.     On information and belief, BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

62.     YETI is entitled to injunctive relief, and YETI is entitled to recover at least BOSS Coolers' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count VI: Unfair Competition and False Designation of Origin
### Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

63.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

64.     Based on the activities described above, including, for example, BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, and BOSS Coolers using at least YETI's "YETI" trademark, trade dress, and/or colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers, in direct competition with YETI, has engaged and continues to engage in unfair competition and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).   BOSS Coolers has obtained an unfair advantage as compared to YETI through BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof and BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof to falsely designate the origin, affiliation, and/or sponsorship of BOSS Coolers and of the Infringing Products.

65.     YETI's trade dress is entitled to protection under the Lanham Act.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used its trade dress in the United States.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.   Moreover, YETI's trade dress acquired this secondary meaning before BOSS Coolers commenced its unlawful use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

24

66.     BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof and of YETI's "YETI" trademark and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

67.     On information and belief, BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof and YETI's "YETI" trademark and/or colorable imitations thereof has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by direct copying of YETI's "YETI" trademark in an effort to sell its own cooler products, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

68.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits, YETI's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

### Count VII: Trademark Dilution
### Under Tex. Bus. & Com. Code § 16.103

69.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

70.     Based on the activities described above, including, for example BOSS Coolers using at least YETI's "YETI" trademark in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers has diluted and continues to dilute YETI's "YETI" trademark under § 16.103 of the Texas Business & Commerce Code. BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof is likely to cause and has caused dilution of YETI's famous "YETI" trademark at least by eroding the

public's exclusive identification of YETI's famous "YETI" trademark with YETI, by lessening the capacity of YETI's famous "YETI" trademark to identify and distinguish YETI's cooler products, by associating YETI's famous "YETI" trademark with products of inferior quality, by impairing the distinctiveness of YETI's famous "YETI" trademark, and by tarnishing YETI's famous "YETI" trademark and YETI's reputation.

71.    YETI's "YETI" trademark is famous through extensive and continuous promotion and use for years in the State of Texas. Through that extensive use, YETI's "YETI" trademark has become a famous, well-known indicator of the origin and quality of YETI's cooler and other products throughout Texas and is widely recognized by the general consuming public as a designation of the source of YETI's cooler and other products. Moreover, YETI's "YETI" trademark became famous before BOSS Coolers commenced its use of YETI's "YETI" trademark and/or colorable imitations thereof in connection with the Infringing Products.

72.    BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's "YETI" trademark and its cooler and other products.

73.    On information and belief, BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by BOSS Coolers' copying of YETI's "YETI" trademark in an effort to sell its own cooler products, including BOSS Coolers using "YETI" and "YETEE" in connection with its products, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

74.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

**Count VIII: Trade Dress Dilution**
**Under Tex. Bus. & Com. Code § 16.103**

75.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

76.     Based on the activities described above, including, for example BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, and on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, BOSS Coolers has diluted and continues to dilute YETI's trade dress under § 16.103 of the Texas Business & Commerce Code.  BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof is likely to cause and has caused dilution of YETI's famous trade dress at least by eroding the public's exclusive identification of YETI's famous trade dress with YETI, by lessening the capacity of YETI's famous trade dress to identify and distinguish YETI's cooler products, by associating YETI's trade dress with products of inferior quality, and by impairing the distinctiveness of YETI's famous trade dress.

77.     YETI's trade dress is entitled to protection under Texas law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a famous and well-known indicator of the origin and quality of YETI's cooler products in the United States and in the State of Texas, and YETI's trade dress is widely recognized by the public throughout Texas as a designation of the source of YETI's cooler products.   YETI's trade dress also acquired

substantial secondary meaning in the marketplace, including in the State of Texas.  Moreover, YETI's trade dress became famous and acquired this secondary meaning before BOSS Coolers commenced its unlawful use of YETI's trade dress and colorable imitations thereof in connection with the Infringing Products.

78.     BOSS Coolers' use of YETI's trade dress and colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

79.     On information and belief, BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof have been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

80.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits, actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

### Count IX: Patent Infringement of U.S. Patent 8,910,819 Under 35 U.S.C. § 271

81.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

82.     BOSS Coolers has infringed and continues to infringe the '819 patent at least by using, offering to sell, and selling the "YETEE KILLER" series of coolers, including the YETEE KILLER 16 LITER 'BABYBOSS', the YETEE KILLER 26 LITER, the YETEE KILLER 48

LITER, and the YETEE KILLER 70 LITER, and on information and belief by making these coolers and/or importing them into the United States, which are covered by one or more claims of the '819 patent.

83.     BOSS Coolers' acts of infringement have been without express or implied license by YETI, and are in violation of YETI's rights, and will continue unless enjoined by this Court.

84.     On information and belief, BOSS Coolers' infringement of the '819 patent has been and is in willful disregard of the '819 patent and the rights created thereunder, as evidenced by the similarities between BOSS Coolers' coolers and the inventions claimed in the '819 patent, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

85.     This is an exceptional case in view of, *inter alia*, BOSS Coolers' willful infringement.

86.     YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

87.     BOSS Coolers has caused, is causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

### Count X: Patent Infringement of U.S. Patent 9,187,232 Under 35 U.S.C. § 271

88.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

89.     BOSS Coolers has infringed and continues to infringe the '232 patent at least by using, offering to sell, and selling the "YETEE KILLER" series of coolers, including the YETEE

KILLER 16 LITER 'BABYBOSS', the YETEE KILLER 26 LITER, the YETEE KILLER 48 LITER, and the YETEE KILLER 70 LITER, and on information and belief by making these coolers and/or importing them into the United States, which are covered by one or more claims of the '232 patent.

90.     BOSS Coolers' acts of infringement have been without express or implied license by YETI, and are in violation of YETI's rights, and will continue unless enjoined by this Court.

91.     On information and belief, BOSS Coolers' infringement of the '232 patent has been and is in willful disregard of the '232 patent and the rights created thereunder, as evidenced by the similarities between BOSS Coolers' coolers and the inventions claimed in the '232 patent, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

92.     This is an exceptional case in view of, *inter alia*, BOSS Coolers' willful infringement.

93.     YETI has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under at least 35 U.S.C. §§ 281, 284, and 285.

94.     BOSS Coolers has caused, is causing, and will continue to cause irreparable harm to YETI for which there is no adequate remedy at law and for which YETI is entitled to injunctive relief under at least 35 U.S.C. § 283.

### Count XI:
### Common Law Trademark Infringement

95.     YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

96.     Based on the activities described above, including, for example, BOSS Coolers using at least YETI's "YETI" trademark and/or colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers, in direct competition with YETI, has engaged and continues to engage in common law trademark infringement. BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof is likely to cause confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

97.     BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's "YETI" trademark and its cooler and other products.

98.     On information and belief, BOSS Coolers' use of YETI's "YETI" trademark and/or colorable imitations thereof have been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by BOSS Coolers' direct copying of YETI's "YETI" trademark in an effort to sell its own cooler products, including its use of "YETI" and "YETEE" in connection with its products, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

99.     YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, BOSS Coolers' profits, punitive damages, costs, and YETI's reasonable attorney fees.

## Count XII:
## Common Law Trade Dress Infringement

100.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

101.    Based on the activities described above, including, for example, BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, and BOSS Coolers using at least YETI's trade dress and/or colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers, in direct competition with YETI, has engaged and continues to engage in common law trade dress infringement. BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof is likely to cause confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI.

102.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used its trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress acquired this secondary meaning before BOSS Coolers commenced its use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

103.    BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.

104.    On information and belief, BOSS Coolers' use of YETI's trade dress and colorable imitations thereof has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

105.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, BOSS Coolers' profits, punitive damages, costs, and YETI's reasonable attorney fees.

<u>**Count XIII:**</u>
<u>**Common Law Unfair Competition**</u>

106.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

107.    Based on the activities described above, including, for example, BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, and BOSS Coolers using at least YETI's "YETI" trademark and/or colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers, in direct competition with YETI, has engaged and continues to engage in common law unfair competition. BOSS

33

Coolers has simulated YETI's "YETI" trademark and trade dress in an intentional and calculated manner. BOSS Coolers has also interfered with YETI's business.

108.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.   YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.   Moreover, YETI's trade dress acquired this secondary meaning before BOSS Coolers commenced its unlawful use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

109.    BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof and its use of YETI's "YETI" trademark have caused and, unless enjoined, will continue to cause substantial and irreparable injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's "YETI" trademark and trade dress and its cooler and other products.

110.    On information and belief, BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof and its use of YETI's "YETI" trademark has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by BOSS Coolers' direct copying of YETI's "YETI" trademark in an effort to sell its own cooler products, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

111.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, BOSS Coolers' profits, punitive damages, costs, and reasonable attorney fees.

34

### Count XIV:
### Common Law Misappropriation

112.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

113.    Based on the activities described above, including, for example, BOSS Coolers promoting, offering for sale, selling, and distributing the Infringing Products, and on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, BOSS Coolers, in direct competition with YETI, has engaged and continues to engage in common law misappropriation.

114.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money. BOSS Coolers wrongfully used YETI's trade dress and/or colorable imitations thereof in competition with YETI and gained a special advantage because BOSS Coolers was not burdened with the expenses incurred by YETI. BOSS Coolers has commercially damaged YETI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the Infringing Products, by creating a false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with YETI, and by taking away sales that YETI would have made.

115.    YETI's trade dress is entitled to protection under the common law.  YETI's trade dress includes unique, distinctive, and non-functional designs.  YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas.  Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products.  YETI's trade dress has also acquired substantial secondary meaning in the marketplace.  Moreover, YETI's trade dress

acquired this secondary meaning before BOSS Coolers commenced its unlawful use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

116.    BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress and its cooler products.  Moreover, as a result of its misappropriation, BOSS Coolers has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that YETI invested in establishing the reputation and goodwill of YETI's trade dress and its cooler products.

117.    On information and belief, BOSS Coolers' misappropriation of YETI's trade dress has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

118.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least YETI's damages, BOSS Coolers' profits, punitive damages, costs, and reasonable attorney fees.

**Count XV:**
**Unjust Enrichment**

119.    YETI realleges and incorporates the allegations set forth in paragraphs 1 through 34 as though fully set forth herein.

120.    Based on the activities described above, including, for example, BOSS Coolers advertising, promoting, offering for sale, selling, and distributing the Infringing Products, on information and belief BOSS Coolers making the Infringing Products and/or importing the Infringing Products into the United States, and BOSS Coolers using at least YETI's "YETI"

trademark and/or colorable imitations thereof in connection with advertising, promoting, offering for sale, selling, and distributing the Infringing Products, BOSS Coolers, in direct competition with YETI, has and continues to unjustly enrich itself. BOSS Coolers has wrongfully obtained benefits as YETI's expense. BOSS Coolers has also, *inter alia* operated with an undue advantage.

121.    YETI created the products covered by YETI's trade dress through extensive time, labor, effort, skill, and money. BOSS Coolers has wrongfully used and is wrongfully using YETI's trade dress and/or colorable imitations thereof, has wrongfully used YETI's "YETI" trademark in competition with YETI, and has gained and is gaining a wrongful benefit by undue advantage. BOSS Coolers has not been burdened with the expenses incurred by YETI, yet BOSS Coolers is obtaining the resulting benefits for its own business and products.

122.    YETI's trade dress is entitled to protection under the common law. YETI's trade dress includes unique, distinctive, and non-functional designs. YETI has extensively and continuously promoted and used YETI's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, YETI's trade dress has become a well-known indicator of the origin and quality of YETI's cooler products. YETI's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, YETI's trade dress acquired this secondary meaning before BOSS Coolers commenced its unlawful use of YETI's trade dress and/or colorable imitations thereof in connection with the Infringing Products.

123.    BOSS Coolers' use of YETI's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to YETI for which YETI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with YETI's trade dress

and its cooler products.  YETI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  BOSS Coolers has wrongfully obtained and is wrongfully obtaining a benefit at YETI's expense by taking undue advantage and free-riding on YETI's efforts and investments, and enjoying the benefits of YETI's hard-earned goodwill and reputation.

124.    On information and belief, BOSS Coolers' unjust enrichment at YETI's expense has been intentional, willful, and malicious.  BOSS Coolers' bad faith is evidenced at least by the similarity of the Infringing Products to YETI's trade dress, by BOSS Coolers' direct copying of YETI's "YETI" trademark in an effort to sell its own cooler products, as seen, for example, in the illustrations above, and by BOSS Coolers' continuing disregard for YETI's rights.

125.    YETI is entitled to injunctive relief, and YETI is also entitled to recover at least BOSS Coolers' profits.

## Demand for Jury Trial

YETI hereby demands a jury trial on all issues so triable.

## Relief Sought

WHEREFORE, YETI respectfully prays for:

1.    Judgment that BOSS Coolers has (i) willfully infringed YETI's trade dress and trademark in violation of § 1125(a) of Title 15 in the United States Code; (ii) willfully engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (iii) willfully diluted YETI's trade dress and trademark in violation of § 1125(c) of Title 15 in the United States Code; (iv) willfully diluted YETI's trade dress and trademark in violation of Tex. Bus. & Com. Code § 16.103; (v) willfully violated YETI's registered trademark in violation of § 1114(1) of Title 15 in the United States Code; (vi) willfully

infringed the '819 patent in violation of § 271 of Title 35 in the United States Code; (vii) willfully infringed the '232 patent in violation of § 271 of Title 35 in the United States Code; (viii) willfully violated YETI's common law rights in YETI's trade dress and trademark; (ix) willfully engaged in common law unfair competition; (x) willfully engaged in common law misappropriation; and (xi) willfully unjustly enriched itself at YETI's expense;

2.      An injunction against further infringement and dilution of YETI's trade dress, further infringement of YETI's trademark, further infringement of the '819 and the '232 patents, and further acts of unfair competition, misappropriation, and unjust enrichment by BOSS Coolers, and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress, trademark, and/or the '819 and the '232 patents pursuant to at least 15 U.S.C. § 1116, 35 U.S.C. § 283, and Tex. Bus. & Com. Code § 16.104;

3.      An Order directing BOSS Coolers to recall all Infringing Products sold and/or distributed and provide a full refund for all recalled Infringing Products;

4.      An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of YETI's trade dress and/or trademark in BOSS Coolers' possession or control, (iii) all plates, molds, and other means of making the Infringing Products in BOSS Coolers' possession, custody, or control, and (iv) all advertising materials related to the Infringing Products in BOSS Coolers' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing BOSS Coolers to publish a public notice providing proper attribution of YETI's trade dress to YETI, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6.      An Order barring importation of the Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.      An award of BOSS Coolers' profits, YETI's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 11125(c), 1116, and 1117 and Tex. Bus. & Com. Code § 16.104;

8.      An award of damages to compensate YETI for BOSS Coolers' infringement of the '819 and '232 patents, together with prejudgment and postjudgment interest, costs, and reasonable attorney fees, pursuant at least to 35 U.S.C. §§ 284 and 285; and

9.      For all such other and further relief as this Court deems just and proper.

Dated:  December 21, 2015                    Respectfully submitted,


By:   */s/ Joseph Gray*_____
Joseph Gray
Texas Bar No. 24045970
Kevin J. Meek
Texas Bar No. 13899600
joseph.gray@bakerbotts.com
BAKER BOTTS LLP
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Telephone: (512) 322-2639
Facsimile: (512) 322-8385

Joseph J. Berghammer (*pro hac vice forthcoming*)
Illinois Bar No. 6273690
jberghammer@bannerwitcoff.com
Michael L. Krashin (*pro hac vice forthcoming*)
Illinois Bar No. 6286637
mkrashin@bannerwitcoff.com
Katie L. Becker (*pro hac vice forthcoming*)
Illinois Bar No. 6292366
kbecker@bannerwitcoff.com
BANNER & WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, IL 60606-7407
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

**ATTORNEYS FOR YETI COOLERS, LLC**